UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PINTO KROPEK,

Plaintiff,

v.

Civil Action No. 13-13573
Hon. Stephen J. Murphy, III
Magistrate Judge David R. Grand

JUDGE BRIAN SULLIVAN, JUDGE MARK A. McCONNELL, TROTT & TROTT, P.C., DONALD J. KING, PARISA GHAZAERI, WARREN EVANS, RALPH LEGGAT, EHMAN & GREENSTREET, INC., JPMORGAN CHASE BANK, N.A, and FEDERAL NATIONAL MORTGAGE ASSOCIATION, individually, Jointly and severally,

Defendants.
_____________________________________/

**REPORT AND RECOMMENDATION TO GRANT (1) JPMORGAN CHASE BANK, N.A. AND FEDERAL NATIONAL MORTGAGE ASSOCIATION'S MOTION TO DISMISS [9]; (2) TROTT & TROTT, P.C., KING, AND GHAZAERI'S MOTION FOR SUMMARY JUDGMENT/DISMISSAL [11]; AND (3) EVANS AND LEGGAT'S MOTION TO DISMISS [29]**

## I. REPORT

### A. Introduction

When Plaintiff Pinto Kropek's wife passed away in September 2008, the terms of her trust granted Kropek the right to continue living in their home for one year, with the trust making the mortgage payments on the home. At some point after this one-year period ended, the trust ceased making mortgage payments, and Defendant JPMorgan Chase Bank, N.A. ("Chase") retained Defendant Trott & Trott, P.C. to initiate foreclosure proceedings. In September 2009, Defendant Ralph Leggat, then a Special Deputy Sheriff, sold the home Kropek was living in to Chase. Chase then deeded the property to Defendant Federal National Mortgage Association ("Fannie Mae").

In April 2010, Fannie Mae, represented by two attorneys from Trott & Trott – Defendant Donald King and Defendant Parisa Ghazaeri – filed a summary proceeding in Michigan state court to obtain possession of the property. The state court awarded a judgment of possession to Fannie Mae, and that decision was upheld on post-judgment motion practice and appeal. Kropek filed this lawsuit alleging that these (and other) defendants violated his rights under the United States Constitution in foreclosing upon his home and then seeking possession and eviction.

Before the Court are three dispositive motions: (1) Chase and Fannie Mae's motion to dismiss (Doc. #9); (2) Trott & Trott, King, and Ghazaeri's motion for summary judgment or dismissal (Docs. #11, 12); and (3) Leggat and former sheriff Warren Evans' motion to dismiss or for summary judgment (Doc. #29). Kropek filed a single response to both Chase and Fannie Mae's motion and to Trott & Trott, King, and Ghazaeri's motion. (Doc. #24). He did not respond to Evans and Leggat's motion, and the time for him to do so has passed.

On April 15, 2014, this case was referred to the undersigned for all pretrial purposes by District Judge Stephen J. Murphy, III. (Doc. #33). Having considered the briefing, the Court will proceed without oral argument. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons detailed below, the Court recommends that the moving defendants' motions be granted.

**B. Foreclosure on Kropek's Home**

Kropek's late wife, Peggy Lee Loshbough, owned a residence on Donna Street in Westland, Michigan ("Property"), where the couple lived. After Loshbough's death in September 2008, the Property was deeded to a trust for Kropek, Loshbough's sister, and Loshbough's two daughters. (Doc. #1 at Ex. 2 (*Fannie Mae v. Loshbough*, No. 10-81981, Transcript of Oral Argument at 6 (Mich. 18th Dist. May 26, 2010) [hereinafter "Mich. 18th Dist. Tr."]); *see also* Doc. #1 at Ex. 3 (*Fannie Mae v. Loshbough*, No. 10-006418, Transcript of Oral

Argument at 7-8 (Mich. 3d Cir. Dec. 3, 2010) [hereinafter "Mich. 3d Cir. Tr."])). The terms of the trust granted Kropek the right to remain in the home for one year. (Mich. 3d Cir. Tr. at 15-18).

At some point in mid-2009, foreclosure proceedings were initiated. On September 30, 2009, as part of those proceedings, Special Deputy Sheriff Leggat sold the Property to Chase. (Doc. #9 at Ex. C). On October 1, 2009, Chase quit-claimed the property to Fannie Mae. (*Id.* at Ex. D).

In April 2010, Fannie Mae initiated a summary proceeding in Michigan's 18th District Court (in Wayne County) to obtain possession of the Property. (Doc. #11 at Ex. K). In that proceeding, two Trott & Trott attorneys, King and Ghazaeri, represented Fannie Mae. (Doc. #1 at ¶¶23-24; Doc. #24 at 9, 11). On May 26, 2010, the 18th District Court entered a judgment of possession in favor of Fannie Mae. (Doc. #11 at Ex. M).

Kropek appealed the 18th District Court's decision to Michigan's Third Judicial Circuit Court (also in Wayne County), but, on October 15, 2010, that court dismissed his appeal. (*See* Mich. 3d Cir. Tr. at 19-20). Kropek continued to challenge the judgment of possession by filing motions in the 18th District Court, motions and another appeal in the Third Judicial Circuit Court, and an appeal to the Michigan Supreme Court (which referred the matter to the Michigan Court of Appeals). The details of these continued challenges are not relevant to this Court's resolution of the pending motions. Suffice it to say that the state court proceedings ended in November 2011, when the Third Judicial Circuit Court granted Fannie Mae's motion to dismiss Kropek's appeal as vexatious. (Doc. #9 at Ex. J). In August 2013, Kropek filed this federal court action.

### C. Kropek's Allegations Against the Moving Defendants

#### *1. Defendants Evans and Leggat*

Kropek has sued "Special Deputy Sheriff" Leggat "in his personal capacity for committing

fraudulent foreclosure sales not only upon Plaintiff but an untold number of uninformed home owners of Wayne County." (Doc. #1 at ¶26). Kropek says that in *Cannon v. Federal Home Loan Mortgage Corp.*, No. 10-B2276 (Mich. 33d Dist.), "the foreclosure was rescinded based upon the fraudulent position of Defendant Leggat[]." (*Id.* at ¶37). Kropek says the same thing happened in *Sample v. CitiMortgage, Inc.*, No. 10-B1241 (Mich. 33d Dist.). In *Sample*, Michigan's 33d District Court concluded that the sheriff's sale was defective "because the appointment of Ralph Leggat as a Deputy Sheriff was not made by the acting Sheriff and that the Under-Sheriff did not have authority under [Michigan Compiled Laws] 51.70 to appoint a Deputy Sheriff." (*Id.* at 44 (order granting defendants' motion for summary disposition)).

Kropek has sued Evans because he was "the Sheriff for Wayne County at the time of the fraudulent foreclosure of Plaintiff's property" and "knew or should have known that a special deputy sheriff cannot conduct foreclosures." (*Id.* at ¶25). According to a brief filed in *Cannon* and attached to Kropek's complaint, Evans held his office until July 2009. (*Id.* at 40).

*2. Defendants Trott & Trott, King, and Ghazaeri*

Kropek has sued Trott & Trott, King, and Ghazaeri because they allegedly knew of the "overwhelming evidence that the foreclosure was void ab initio," yet "moved forward in violation of the Plaintiff as well as the Rules of Professional Conduct … as … officer[s] of the courts." (*Id.* at ¶¶23, 24). Kropek says that Trott & Trott, King, and Ghazaeri "had a duty to report the errors and inform the [state] court of the fraudulent sheriff sale of Plaintiff"s property." (*Id.*). Further, Kropek alleges that because King was counsel in the *Sample* and *Cannon* cases, "he knew in the Kropek matter that Leggat[]'s signature on the sheriff sale was not possible. This then means that there never was an expiration of the redemption period regarding Kropek's property because it never started as the sale was not valid." (*Id.* at ¶37). According to Kropek, Trott & Trott, King,

and/or Ghazaeri "[k]nowingly and intentionally manufactur[ed] evidence[,] lack of witness [*sic*] and witness identifications when none existed or were produced in support of the Sheriff's Sale without personal service as well as Defendant Leggat impersonating a Deputy Sheriff in violation of the law." (*Id.* at ¶¶58(A), 60).

Although Kropek does not say which Defendants were involved, given that Chase retained Trott & Trott to foreclose by advertisement (*see* Doc. #11-1 at 13-14), it appears that Kropek is alleging that Chase, Trott & Trott, King, and/or Ghazaeri violated his constitutional rights by proceeding to foreclose without proper service/notice and a judicial hearing. (Doc. #1 at 29 and ¶¶40, 42, 59). To that end, Kropek claims that "notice of foreclosure was not posted" on the Property, and that he was "unaware of the sale of the [P]roperty until the eviction process began as he thought the [P]roperty was already paid for by evidence of the Warranty Deed he was provided after the passing of his wife." (*Id.* at ¶¶37, 52(D)).

*3. Defendants Chase and Fannie Mae*

Kropek has sued Chase as a "Servicer without an assignment of the original Mortgage." (*Id.* at ¶28). And, Fannie Mae "is being sued in its official capacity as Federal Home Loan Mortgage Corporation [Freddie Mac] as alleged Investor/Note Holder who was unknown at the time of the fraudulent foreclosure of Plaintiffs property." (*Id.* at ¶29). Kropek says that, "to this date," he "cannot be sure if Defendant Chase or Fannie Mae actually owned the note as evidence was never provided." (*Id.* at ¶52(F)). In his response to Chase's motion to dismiss, Kropek adds a little more: "Chase and Freddie Mac initiated the unlawful foreclosure proceedings via Defendant Trott and Trott, P.C. So whether they like it or not, they are intrinsically entwined in this matter. Also, recent astronomical judgments against Chase for fraud committed by them should be noted by this Court as discovery can and will prove their fraud in this case as well via

their bogus assignment to Freddie Mac for one dollar after the redemption period ended." (Doc. #24 at 3). In his response brief, Kropek also asserts that Chase and Fannie Mae were "unjustly enriched" by Trott & Trott's, King's, and/or Ghazaeri's allegedly improper conduct during the state court proceedings. (*Id.* at ¶¶15-16, 18).

*4. Kropek's Legal Theory*

Kropek's primary legal theory is that Defendants violated his rights under the U.S. Constitution. The title of his complaint is "Complaint for Violations of Civil & Constitutional Rights Pursuant to 42USC§1983, &1985 …." (Doc. #1). Kropek says his suit is brought pursuant to 42 U.S.C. §§1983 and 1985 for violations of the "Fourth, Fifth, Sixth, Seventh, Ninth, Tenth and the Fourteenth Amendments of the Constitution of the United States …." (*Id.* at ¶¶2-3; *see also* ¶¶6-7). Kropek alleges that Defendants' failure to provide personal service and a judicial hearing prior to foreclosure violated the Fifth and Seventh Amendments and the "Privileges and Immunities under the Federal-common-law." (*Id.* at ¶42). Kropek also asserts violations of substantive and procedural due process, and equal protection of the laws. (*Id.* at ¶¶54, 59, 63). Concluding his Complaint with several "wherefore" clauses, he again asserts that the suit is brought pursuant to 42 U.S.C. §§1983 and 1985 and references numerous provisions of the Constitution, including the "Fourth, Fifth, Eighth, Ninth, Tenth and Fourteenth Amendment[s]," and the Privileges and Immunities Clause of Article IV, Section 2. (*Id.* at 27-30.)

**D. Analysis**

*1. The* Rooker-Feldman *Doctrine*

Evans and Leggat, along with Trott & Trott, King, and Ghazaeri, argue that under the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction over Kropek's claims against them. (Doc. #29 at 11; Doc. #11-1 at 22-26). The Court finds that this reliance on the

*Rooker-Feldman* doctrine is misplaced, and concludes that *Rooker-Feldman* does not deprive the Court of subject matter jurisdiction over Kropek's claims against any of the presently moving Defendants.[1]

Under 28 U.S.C. §1257, only the United States Supreme Court has subject matter jurisdiction to review a state court's judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). In *Exxon Mobil*, the Supreme Court clarified the scope of the *Rooker-Feldman* doctrine, explaining that it is not coextensive with either abstention or preclusion. Regarding parallel state and federal proceedings, the Supreme Court explained, "*Rooker-Feldman* is not triggered simply by the entry of judgment in state court." *Id.* at 292. Although "[c]omity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation," "neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." *Id.* Rather, "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law." *Id.* at 293. And, regarding preclusion, the Supreme Court explained:

> Nor does [28 U.S.C.] §1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party …, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

*Id.* (quoting *GASH Associates v. Vill. of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993)); *see also*

[1] Neither Fannie Mae nor Chase raised the *Rooker-Feldman* doctrine, but this Court has a duty to police its own subject matter jurisdiction. *See Get Back Up, Inc. v. City of Detroit*, 878 F. Supp. 2d 794, 802 (E.D. Mich. 2012).

*GASH Associates*, 995 F.2d at 728 ("The *Rooker-Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.").

Following *Exxon Mobil*, in *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006), the Sixth Circuit stressed that in determining whether the *Rooker-Feldman* doctrine applies, district courts should focus on the source of the plaintiff's injury. The Sixth Circuit explained:

> The question naturally arises as how to differentiate between a claim that attacks a state court judgment, which is within the scope of the *Rooker-Feldman* doctrine, and an independent claim, over which a district court may assert jurisdiction. We find an appropriate rule of thumb in the Fourth Circuit's decision in *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712 (4th Cir. 2006). That court explained:
>
> > The plaintiffs in *Rooker* and *Feldman* sought redress for an injury allegedly caused by the *state-court decision* itself – in *Rooker*, the plaintiff sought to overturn a state-court judgment in federal district court, and in *Feldman*, the plaintiffs sought to overturn a judgment rendered by the District of Columbia court in federal district court. In *Barefoot* [a pre-*Exxon Mobil* case], by contrast, we extended the *Rooker-Feldman* doctrine to apply in situations where the plaintiff, after losing in state court, seeks redress for an injury allegedly caused by the *defendant's actions*.
>
> *Id.* at 717. The inquiry then is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick*, 451 F.3d at 393. The Sixth Circuit provided an example of when the doctrine would not apply even though it "'denied a legal conclusion reached by a state court'":

> "Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings

> the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination."

*Id.* at 394 (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005)).

In sum, "[t]he key point is that the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim." *Id.* The "*Rooker-Feldman* doctrine is not a panacea to be applied whenever state court decisions and federal court decisions potentially or actually overlap. The Supreme Court made clear in *Exxon Mobil* that the doctrine is confined to those cases exemplified by *Rooker* and *Feldman* themselves: when a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law." *Id.* at 395.

Although Kropek's complaint is far from clear, the *Rooker-Feldman* doctrine does not bar federal court adjudication of his claims against Chase, Fannie Mae (or Freddie Mac), Leggat, Evans, Trott & Trott, King, or Ghazaeri.[2] First, it does not appear that Kropek asks for the state court judgment of possession to be reversed or, as in *Rooker*, declared "null and void." Instead, he seeks a declaratory judgment that he is not subject to Michigan's statutes, a collateral attack in Michigan's courts, or a foreclosure sale by the sheriff. (Doc. #1 at 29). He asks that a jury "determine the amount of damages and award such damages to Plaintiff for the illegal activities by all Defendants involved." (*Id.* at 31; *see also* ¶2 ("Plaintiff's complaint for Damages and Just

[2] This Court previously recommended dismissing Defendants Judge Brian Sullivan and Judge Mark McConnell on the basis of *Rooker-Feldman* and immunity. (Docs. #25, 30). There is nothing inherently inconsistent about *Rooker-Feldman* applying to some claims against some defendants and not to other claims against other defendants. *See Hall v. Callahan*, 727 F.3d 450, 454 (6th Cir. 2013) ("[Relying on *McCormick*,] Plaintiffs claim that Judge Cross was a third party who injured them with her actions during the state court proceeding. However, Judge Cross was not a third party, but the presiding judge. This directly implicates *Rooker-Feldman* concerns.").

Compensation under the Civil Rights provisions of Title 42 U.S.C. §1983 & 1985 ….")).

Second, the alleged conduct of Defendants Chase, Fannie Mae (or Freddie Mac), Leggat, Evans, Trott & Trott, King, and Ghazaeri led *to* – but did not stem *from* – the state court's judgment of possession against Kropek. *See Kovacic v. Cuyahoga County Dep't of Children & Family Servs.*, 606 F.3d 301, 310 (6th Cir. 2010) (finding that the *Rooker-Feldman* doctrine did not bar legal claims by children who were removed from their mother's custody; explaining, "the children's claims in this case do not seek review or reversal of the decision of the juvenile court to award temporary custody to the state, but instead focus on the conduct of Family Services and of the social workers *that led up to* the juvenile court's decision to award temporary custody to the County."). According to Kropek's complaint, Leggat allegedly did not have authority to conduct the sheriff's sale; Evans knew about the issues with Leggat but failed to prevent the sale; and Trott & Trott, King, and Ghazaeri failed to disclose this impropriety during the state court summary proceedings. Chase, Trott & Trott, King, and Ghazaeri allegedly violated Kropek's constitutional rights by failing to give him personal notice and a hearing when they foreclosed by advertisement. Further, Chase allegedly foreclosed without the mortgage; Fannie Mae allegedly did so without demonstrating ownership of the note; and Chase and Fannie Mae are allegedly liable for Trott & Trott, King, and Ghazaeri's conduct in the state court proceedings. All of this is pre-judgment conduct. *See Lawrence v. Welch*, 531 F.3d 364, 369 (6th Cir. 2008) ("[W]e concluded in *McCormick* that plaintiff's claims that certain defendants committed fraud and misrepresentation in the course of state probate proceedings did not allege an injury caused by the state court judgment and thus were not barred by *Rooker-Feldman*."). None of these alleged wrongful actions occurred because of the state court judgment of possession. Accordingly, the source of Kropek's alleged injuries caused by the moving Defendants is not "the state court judgment itself."

*McCormick*, 451 F.3d at 394.

An argument might be made that Fannie Mae, Trott & Trott, King, and Ghazaeri's conduct *after* the judgment of possession triggers *Rooker-Feldman* as to some of Kropek's claims against them: absent the judgment of possession, Kropek does not appeal to Michigan's Third Judicial Circuit, and Kropek and Ghazaeri do not appear before Third Judicial Circuit Judge Brian Sullivan. And, Kropek alleges that Defendants (unspecified, but presumably Fannie Mae, Trott & Trott, King, and/or Ghazaeri) "continu[ed] to engage in improper abusive tactics, including making fraudulent false and misleading information in the Complaint in an effort [to] trick and/or mislead the … judge … in the State of Michigan 3rd Judicial Circuit for Wayne County." (Doc. #1 at ¶58(B)). Still, the Court believes that the *Rooker-Feldman* doctrine does not bar claims based on Fannie Mae, Trott & Trott, King, or Ghazaeri's alleged misconduct during litigation after the judgment of possession. Their alleged misconduct (failing to disclose evidence or making false statements) was not dictated by the judgment of possession; the judgment did not direct Fannie Mae, Trott & Trott, King, or Ghazaeri to engage in the alleged misconduct. *See Hoblock*, 422 F.3d at 88 ("Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear."). In other words, Defendants were not complying with or implementing any state court order. *Cf. Hoblock*, 422 F.3d at 89 (explaining that *Rooker-Feldman* applied because the defendant Board of Elections would have counted the challenged absentee ballots "but for the state court's judgment ordering the Board not to do so," and, therefore, "the state-court judgment produced the Board's refusal to count the ballots, the very injury of which the voters complain").

Accordingly, the *Rooker-Feldman* doctrine does not deprive this Court of jurisdiction over

Kropek's claims against the presently moving Defendants.

2. *Defendants' Other Bases for Dismissal*

Defendants' motions do not rest entirely on the *Rooker-Feldman* doctrine. Evans and Leggat additionally argue that Kropek has not stated a claim against them upon which relief may be granted primarily because Kropek has not alleged that they engaged in state action. (Doc. #35 at 9-15). Trott & Trott, King, and Ghazaeri assert that res judicata bars Kropek's suit against them. (Doc. #11 at 26-29). These three Defendants also assert that Kropek has not stated a claim upon which relief may be granted in part because their alleged conduct did not constitute state action. (*Id.* at 29-31). As for Chase and Fannie Mae, they too raise the affirmative defense of res judicata and the related defense of collateral estoppel. (Doc. #9 at 19-22). Chase and Fannie Mae further assert that they are not governmental entities or state actors and so Kropek's claims pursuant to 42 U.S.C. §1983 fail as a matter of law. (*Id.* at 22-24).

a. Legal Standard

In resolving a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court applies the now-familiar plausibility standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court asks whether the Complaint, read liberally given Kropek's *pro se* status, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), sets forth "sufficient factual matter" to state a claim to relief that is "plausible on its face," *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not a "probability requirement," plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Ultimately, determining whether a complaint states a plausible claim for relief is "a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

b. Res Judicata

Although the Court finds that it is more straightforward to analyze the sufficiency of Kropek's factual allegations, it pauses to comment on Trott & Trott, King, Ghazaeri, Chase, and Fannie Mae's reliance on the doctrine of res judicata. These Defendants state that this affirmative defense bars claims that could have been raised in prior litigation. (Doc. #9 at 19 ("Michigan follows a 'broad rule' of res judicata which bars not only claims actually litigated in the prior action, but every claim arising out of the same transaction which the parties could have raised but failed to do."); Doc. #11-1 at 28 ("Plaintiff clearly could have raised her [*sic*] claims against Defendants, Trott & Trott, Donald King, and Parisa Ghazaeri, in the prior state court action.")). This, however, overlooks the fact that all of the prior state-court litigation stemmed from a summary proceeding, and "Michigan courts recognize a statutory exception to res judicata in the case of summary proceedings …. Claims are not precluded on the basis that they *could have* been brought in the earlier proceeding. Instead, res judicata only applies to claims *actually litigated* in a summary proceeding." *Garza v. Freddie Mac*, 2010 WL 4539521, at *3 (E.D. Mich. Nov. 3, 2010); *see also Wheeler v. Fed. Nat. Mortgage Ass'n*, 2013 WL 449918, at *5 (E.D. Mich. Jan. 4, 2013) ("[W]hile res judicata precludes this court from revisiting the state court eviction judgment, it would not bar other claims that were not adjudicated in the eviction proceedings."), *report and recommendation adopted*, 2013 WL 450128 (E.D. Mich. Feb. 6, 2013).[3]

[3] Chase and Fannie Mae say that the claims asserted against them in this suit "in fact were brought during" the prior state-court litigation, but they do not compare, claim by claim, the claims in this suit against those actually litigated in the summary proceeding. (Doc. #9 at 20).

The Court now turns to analysis of the specific claims Kropek has raised in this suit, and whether he has adequately pled the elements of those claims.

c. Failure to State a Claim

*(1) Irrelevant Legal Theories*

As an initial matter, a number of legal theories Kropek raises in passing do not bear any relevance to his factual allegations. For example, Kropek mentions the Treaty of Ghent of 1814, (Doc. #1 at ¶56), but that treaty relates to the end of the War of 1812, a piece of history having no relevance to the matters at issue here. *See* PBS.org, *The War of 1812: The Treaty of Ghent*, http://goo.gl/NRvw1c (last visited June 24, 2014). He also mentions 1 U.S.C. §109 (Doc. #1 at ¶62), but that statute deals with the effect a new criminal statute has on penalties incurred under an older statute that it repealed. *See Dorsey v. United States*, 132 S. Ct. 2321, 2330 (2012). Again, as this is a purely civil action, the statute appears to have no relevance to Kropek's instant claims. Kropek also references "Federal Title Law" (Doc. #1 at 29 and ¶¶58(C), 65), a term that apparently comes from *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) (*see* Doc. #1 at ¶¶41, 64). But, *Grable & Sons* resolved "whether want of a federal cause of action to try claims of title to land obtained at a federal tax sale precludes removal to federal court of a state action with nondiverse parties raising a disputed issue of federal title law." 545 U.S. at 310. The answer to that question has no bearing on this case. Kropek also mentions Section 2 of the Sherman Act (Doc. #1 at ¶36), but that statute involves monopolies and unfair competition, *see Spirit Airlines, Inc. v. Northwest Airlines, Inc.*, 431 F.3d 917, 931 (6th Cir. 2005), not foreclosures by advertisement or state summary proceedings.

Kropek also invokes 42 U.S.C. §1985, but that statute does not apply to his factual allegations against the moving Defendants either. That statute relates to conspiracies to prevent a

United States officer from performing his or her duties, *see* 42 U.S.C. §1985(1), to deter a federal court witness from testifying, *see* §1985(2), to influence a federal court juror, *see* §1985(2), to deny someone equal protection of the laws, *see* §1985(2) and (3), and to prevent a citizen from voting or advocating for a candidate for United States President, Vice President, or Congress, *see* §1985(3). Defendants' alleged conduct does not involve United States officers, voting, or federal court witnesses or jurors. And, under both §1985(2) and §1985(3), a plaintiff must demonstrate deprivation of equal protection of the laws due to racial or other class-based animus. *See Taylor v. Streicher*, 465 F. App'x 414, 419 (6th Cir. 2012); *Maxwell v. Dodd*, 662 F.3d 418, 422 (6th Cir. 2011). Kropek has not alleged any such class-based animus. Thus, all of Kropek's claims based on these legal theories should be dismissed.

*(2) Constitutional Claims*

As noted, Kropek's primary legal theory is that Defendants violated the United States Constitution. He alleges violations of various provisions of the governing text, including the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Fourteenth Amendments, and the Privileges and Immunities Clause of Article IV, Section 2. (Doc. #1 at 27-30, ¶¶2-3, 6-7, 42, 54, 59, 63). Kropek brings these claims pursuant to 42 U.S.C. §1983. (*Id.* at 1, 29, ¶¶2, 6). Assuming for the sake of argument that all of these Constitutional provisions provide an individual cause of action (highly doubtful), and further assuming that they all have been incorporated against the States (not all have), the problem with Kropek's reliance on the Constitution and 42 U.S.C. §1983 is that he has failed to make the prerequisite showing that the moving Defendants engaged in "state action" when conducting the foreclosure proceedings and sheriff's sale, or that they acted "under color of state law" in subsequently seeking a judgment of possession in the state courts. *See Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 746-47 (9th Cir. 2003) ("The United

States Constitution protects individual rights only from *government* action, not from *private* action. Only when the *government* is responsible for a plaintiff's complaints are individual constitutional rights implicated." (footnote and citations omitted)); *see also Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936-37 (1982) ("Careful adherence to the 'state action' requirement …. avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed. A major consequence is to require the courts to respect the limits of their own power as directed against state governments and private interests.").

Leggat, Evans, Chase, Fannie Mae (or Freddie Mac), Trott & Trott, King, and Ghazaeri's alleged wrongful conduct during the foreclosure proceedings leading up to and including the sheriff's sale did not involve state action. In *Northrip v. Fed. Nat'l Mortgage Ass'n,* 527 F.2d 23, (6th Cir. 1975), the Sixth Circuit specifically addressed Michigan's foreclosure by advertisement scheme, and held that such proceedings – even though they involve the use of a sheriff to conduct a sheriff's sale – do not constitute state action under the Fourteenth Amendment. *Id.* at 28-29 ("We … reject cross-appellant's arguments that state action exists because of the involvement of a state official in the foreclosure process and because the mortgagee is engaged in a traditional state function …. [A]lthough a deputy sheriff conducted the foreclosure sale in this case, Michigan law permits the parties to agree that another person will conduct the sale …. [T]he sheriff's presence was only incidental, and not essential, to the employment of a remedy entered into privately by the mortgagee and mortgagor."); *see also Ray v. Oakland County Drain Comm'n*, 115 F. App'x 775, 777 (6th Cir. 2004) ("Despite the existence of a statute to regulate foreclosure by advertisement in Michigan, and the involvement of the sheriff and register of deeds in the procedure, this court concluded [in *Northrip*] that no state action existed for Fourteenth Amendment purposes. Therefore, the creditors that pursued foreclosure were not subject to constitutional restraints.");

*Drew v. Kemp-Brooks*, 802 F. Supp. 2d 889, 899 (E.D. Mich. 2011) (applying *Northrip* to dismiss claims against Leggat and other members of the Wayne County Sheriff's Department: "The Sixth Circuit has held that a sheriff's participation in Michigan's foreclosure by advertisement statute is not 'state action.'"); *Vuaai El v. Mortgage Elec. Registry Sys.*, 2009 WL 2705819, at *10 (E.D. Mich. Aug. 24, 2009) ("The Sixth Circuit has examined the constitutionality of foreclosures by advertisement and determined that no state action exists despite the presence of a state law enforcement officer.").

Accordingly, to the extent that the Constitutional provisions Kropek relies upon have even been incorporated against the states, Kropek has not pled that Leggat, Evans, Chase, Fannie Mae (or Freddie Mac), Trott & Trott, King, or Ghazaeri's conduct leading up to and including the sheriff's sale constituted state action.

Turning to Kropek's allegations that Chase, Fannie Mae (or Freddie Mac), Trott & Trott, King, and Ghazaeri violated his constitutional rights during litigation after the sheriff's sale, those assertions fail to state a claim for a related reason: to bring a constitutional claim pursuant to 42 U.S.C. §1983, Kropek must establish that Chase, Fannie Mae, Trott & Trott, King, and Ghazaeri acted "under color of state law." *See Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) ("To succeed on a claim under section 1983, the claimant must demonstrate both that the conduct complained of was committed by a person acting under color of state law and that the conduct deprived the claimant of rights, privileges or immunities secured by the Constitution or laws of the United States.").[4]

[4] "State action" for purposes of the Fourteenth Amendment and "under color of state law" for purposes of 42 U.S.C. §1983 are not necessarily coextensive. *See Lugar*, 457 U.S. at 935 n.18 ("[A]lthough we hold that conduct satisfying the state-action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law, it does not follow

As a general matter at least, a private party pursuing eviction via the state courts is not acting under color of state law. *See Adkins v. Fountainbleau Mgmt. Servs., LLC*, 2010 WL 786301, at *2 (N.D. Miss. Mar. 3, 2010) ("The complaint … makes the rather extraordinary allegation that private defendants may be held liable for violations of the First and Fourteenth Amendments and/or §1983 merely because they utilized the judicial process, in the form of eviction proceedings. Unsurprisingly, no authority is cited in support of this argument, which is almost certainly incorrect."); *Vuaai El*, 2009 WL 2705819, at *10 ("Regarding the summary proceedings filed by defendant in state court, defendant is not alleged to be, nor does it appear to be, a party that acted under color of state law. Rather, defendant chose to pursue a private cause of action in the form of summary proceedings, from which plaintiff now claims redress. Filing a summary proceeding action is not, in and of itself, a state action."); *compare Lugar*, 457 U.S. at 924-25, 939 n.21, 941-42 (finding, where state had "created a system" giving a creditor the right to file an *ex parte*, prejudgment petition with state court clerk for a writ of attachment (which, if granted, "effectively sequestered" the debtor's property), that creditor engaged in state action and acted "under color of state law" for purposes of §1983), *with Northrip*, 527 F.2d at 27 ("[I]t is clear that the [foreclosure-by-advertisement] statute under attack here did not create the power of sale foreclosure. Instead, the state, by enacting this statute, acted to regulate and standardize a recognized practice.").

And, none of Chase, Fannie Mae (or Freddie Mac), Trott & Trott, King, or Ghazaeri are state actors. *See Fed. Home Loan Mortgage Corp. v. Shamoon*, 922 F. Supp. 2d 641, 644 (E.D. Mich. 2013) ("Plaintiffs argue that, by virtue of FHFA's conservatorship, Freddie Mac is a

---

from that that all conduct that satisfies the under-color-of-state-law requirement would satisfy the Fourteenth Amendment requirement of state action.").

government actor that can be held liable for constitutional violations. This Court disagrees and follows the rationale and result reached by the federal courts addressing similar claims, applying the Supreme Court's decision in *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), holding that Freddie Mac, and similar entity Fannie Mae, were not governmental actors post-conservatorship, and dismissing claims alleging a constitutional violation as a matter of law."); *Rubin v. Fannie Mae*, 2012 WL 6000572, at *4 (E.D. Mich. Nov. 30, 2012) ("The Court also finds that there is no merit in Rubin's due process and section 1983 claims because Fannie Mae is not a governmental actor."); *Ellison v. JP Morgan Chase Bank*, 2013 WL 5913432, at *9-10 (E.D. Mich. Oct. 31, 2013) (citing cases for and concluding "[o]n the basis of the foregoing authority, neither Trott & Trott nor King are properly considered state actors subject to §1983"); *Dunn-Mason v. JP Morgan Chase Bank, N.A.*, 2013 WL 5913684, at *13 (E.D. Mich. Nov. 1, 2013) ("In this case, Chase is a private party and there is no basis in the second amended complaint for inferring that Chase's conduct could be attributed to the state. Accordingly, plaintiff's §1983 claim should be dismissed.").

Further, although the Complaint intimates it, Kropek has not pled facts demonstrating a conspiracy among Chase, Fannie Mae, Trott & Trott, King, Ghazaeri, and the state court judges presiding over the summary proceedings and subsequent appeals such that Chase, Fannie Mae, Trott & Trott, King, and Ghazaeri's litigation conduct could be considered "under color of state law." It is true that "'[i]f a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to §1983 ….'" *Wellman v. PNC Bank*, 508 F. App'x 440, 442 (6th Cir. 2012) (quoting *Cooper v. Parrish*, 203 F.3d 937, 952 n. 2 (6th Cir. 2000)). But "'merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge.'" *Id.*

(quoting *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)). Rather, to properly allege such a conspiracy, Kropek must plead that "'(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed.'" *Id.* (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). He has not done so. On the one hand, Kropek alleges that Trott & Trott, King, and Ghazaeri failed to disclose to the state court judges problems in the foreclosure process, failed to disclose the *Sample* and *Cannon* cases, untruthfully averred to the state courts that the foreclosure sale was proper, and manufactured or fabricated evidence. (Doc. #1 at ¶¶23-25, 45, 57-58, 60). On the other hand, Kropek says that the state court judges "cross-examined" him and ignored his arguments about the impropriety of the foreclosure and sheriff's sale. (*Id.* at ¶¶ 44, 46, 48-52). But, Kropek has not pled how the Defendants and state court judges actually worked "together." True, he asserts that the state-court judges "cross examin[ed]" him "on behalf of the other Defendants" or "worked in conjunction with Defendant Ghazaeri to deny Plaintiff's due process rights." (*Id.* at ¶¶43-44; *see also id.* at ¶¶19, 52(F), 54). But, these allegations are wholly conclusory: they lack the requisite factual matter to make plausible that the state court judges and Chase, Fannie Mae, Trott & Trott, King, and Ghazaeri actually agreed to deprive Kropek of his constitutional rights. *See Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983) ("When a plaintiff in a §1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."); *Myers v. Long*, 2013 WL 820788, at *5 (D.S.D. Mar. 5, 2013) ("The most that Myers alleges is that all of the defendants acted 'in concert' with state and county officers. This vague assertion is insufficient to state a claim against the Manna Defendants.

Merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." (internal citations, quotation marks, and alterations omitted)).

Accordingly, Kropek has not pled that in initiating and litigating the summary proceedings in state court, and continuing to defend their judgment of possession against Kropek's appeals, that any of Chase, Fannie Mae (or Freddie Mac), Trott & Trott, King, or Ghazaeri acted "under color of state law." Kropek therefore cannot bring his constitutional claims based on these Defendants' conduct in the state courts pursuant to 42 U.S.C. §1983, and those claims should be dismissed.

*(3) State Law Claims*

Given that Kropek repeatedly emphasizes that Defendants violated the United States Constitution, and that this suit was brought pursuant to 42 U.S.C. §§1983 and 1985, a fair reading of Kropek's *pro se* complaint is that he has not alleged any state law claims.

To the extent that he has plead such claims, however, the Court should decline to exercise supplemental jurisdiction over them. The Court recognizes that not all of the federal claims have been dismissed because the Complaint names Defendant Ehman & Greenstreet, Inc. ("Ehman"), and Ehman has not appeared in this suit.[5] The complaint's only mention of Ehman is that it was the company that changed the locks on the Property and placed Kropek's belongings on "the

[5] The Court questions whether Ehman has been properly served and uses this opportunity to inform Kropek that his proof of service (*see* Doc. #21 at 7-8) is not sufficient to demonstrate proper service at least because it lacks an accompanying affidavit or declaration. *See Cole v. Shinseki*, 2013 WL 2289257, at *3 (W.D. Tenn. May 23, 2013) ("The Court finds that without a proper affidavit, Plaintiff's proof of service does not comply with [Federal Rule of Civil Procedure] 4(l)."); *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 600 (E.D.N.Y. 2013) ("Upon proper service, plaintiff must file proof of service with the court by filing an affidavit completed by her process server."). The Proof of Service also does not specify the manner in which Kropek purportedly served Ehman, a corporation.

curb." (Doc. #1 at ¶27). Ehman, however, appears to be a private company and this allegation does not explain how it engaged in state action or acted "under color of state law." This Court recommends, then, that the District Court exercise its discretion and dismiss any state law claims against the presently moving Defendants without prejudice. *Cf. Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed …. After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims."); *see also Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) ("Under 28 U.S.C. §1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. If the federal claims are dismissed before trial, the state claims generally should be dismissed as well." (internal quotation marks and citation omitted)).[6]

[6] The Court notes that Kropek's claim that Leggat did not have authority to conduct the sheriff's sale of his Property has been previously considered and rejected. Kropek relies on two cases from Michigan's 33rd District Court finding that Leggat, either because of his position as a special deputy sheriff, or because he was appointed to his position by an undersheriff rather than the sheriff, did not have authority to sell the Property. *See Cannon v. Fed. Home Loan Mortgage Corp.*, No. 10-B2276 (Mich. 33d Dist.); *Sample v. CitiMortgage, Inc.*, No. 10-B1241 (Mich. 33d Dist. May 24, 2010) (order granting defendants' motion for summary disposition); M.C.L. §600.3216 (providing that sale of foreclosed property "shall be made by the person appointed for that purpose in the mortgage, or by the sheriff, undersheriff, or a deputy sheriff of the county" where the property is located). But, judges in this District have rejected both theories. *See English v. Flagstar Bank*, 2009 WL 4730450, at *2 (E.D. Mich. Dec. 9, 2009); *McLehan v. Chase Home Fin., LLC*, 2010 WL 3518021, at *3 (E.D. Mich. Aug. 17, 2010); *see also Bundy v. Fed. Nat. Mortgage Ass'n*, 2011 WL 6963104, at *3 (E.D. Mich. Nov. 15, 2011) (Hluchaniuk, M.J.) ("As a properly deputized special deputy (which plaintiff does not dispute), the special deputy sheriff (defendant Leggat) was authorized to conduct the sale on the property."), *report and recommendation adopted*, 2012 WL 37402 (E.D. Mich. Jan. 9, 2012); *Lessnau v. Dep't of Veteran Affairs*, 2012 WL 6015892, at *3 (E.D. Mich. Dec. 3, 2012) ("Michigan courts have specifically held that a special deputy under [M.C.L.] 51.70, such as Leggat, can perform foreclosure sales." (citing *Kubicki v. Mortgage Elec. Registration Sys.*, 292 Mich. App. 287, 292-93 (2011))).

### E. Conclusion

In sum, the *Rooker-Feldman* doctrine does not deprive this Court of subject matter jurisdiction over Kropek's claims against Defendants Chase, Fannie Mae, Evans, Leggat, Trott & Trott, King, or Ghazaeri. However, Kropek has not alleged that in conducting the foreclosure proceedings these Defendants engaged in state action. And, Kropek has not alleged that these Defendants acted under color of state law in seeking a judgment of possession in state court.

## II. RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that (1) Chase and Fannie Mae's Motion to Dismiss (Doc. #9) be **GRANTED**; (2) Trott & Trott, King, and Ghazaeri's Motion for Summary Judgment/Dismissal (Docs. #11) be **GRANTED**; and (3) Evans and Leggat's Motion to Dismiss or for Summary Judgment (Doc. #29) be **GRANTED. IT IS FURTHER RECOMMENDED** that Kropek's Complaint against Chase, Fannie Mae, Trott & Trott, King, Ghazaeri, Evans, and Leggat be **DISMISSED**.

Dated: July 10, 2014

s/ David R. Grand
DAVID R. GRAND
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan*, 431

F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 10, 2014.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager